W. M. HAVIRLAND et al., Appellees, v. FARMERS INSURANCE COMPANY OF CEDAR RAPIDS, Appellant.

INSURANCE:    Fire Insurance—Proof of Loss—Waiver.  Evidence to 1    the effect that an insured, in a talk with the adjuster of the insurance company, was informed that the loss was being investigated by the state fire marshal, and that there was nothing for the insured to do until she heard from the company, is sufficient to present a jury question on the issue of waiver of sworn proofs of loss, especially when the adjuster was somewhat evasive in his talk with the insured.   (See Book of Anno., Vol. 1, Sec. 9018, Anno. 288 *et seq.*)

INSURANCE:    Fire Insurance—Proof of Loss—Evidence—Admissibili- 2    ty.  Exhibit held inadmissible to establish the giving of statutory proofs of loss.

INSURANCE:    Fire Insurance—Ownership of Property—Inadvertent 3    Plea—Effect.  An inadvertent pleading to the effect that a person other than plaintiff had an interest in the insured property becomes of no consequence when the pleading was duly corrected, and when the proofs conclusively established sole ownership in plaintiff.   (See Book of Anno., Vol. 1, Sec. 9018, Anno. 108 *et seq.*)

Headnote 1:   26 C. J. p. 560.   Headnote 2:   26 C. J. pp. 528, 537. Headnote 3:   26 C. J. p. 489.

Headnote 1:   14 R. C. L. 1348.

*Appeal from Story District Court*—B. R. BRYSON, Judge.

MAY 10, 1927.

REHEARING DENIED OCTOBER 1, 1927.

Action to recover under an Iowa uniform fire insurance policy, by reason of a fire loss.  Cause submitted to a jury, the trial resulting in a verdict for the plaintiff; and from the judgment entered thereon the defendant appeals.—*Affirmed.*

*Grimm, Wheeler, Elliott & Shuttleworth* and *J. R. Larson,* for appellant.

*Dunn, White & Dunn,* for appellees.

DE GRAFF, J.—This is an action on a $1,500 policy of fire insurance which was issued by the defendant-company to the plaintiff W. M. Havirland on July 11, 1923. The policy covered

1. INSURANCE: fire insurance: proof of loss: waiver.

the property described therein until June 11, 1924. The property insured was a two-story frame building located in the town of Fernald, Iowa. The fire loss, which was total, occurred October 5, 1923.

It is alleged in the petition that, immediately after said fire, the plaintiff W. M. Havirland gave notice, in writing, to the defendant insurance company of the said loss. There is no allegation of furnishing the company with sworn proof of loss, but there is a plea of waiver.

One of the provisions of the policy (Standard Form) reads:

"If loss occur the insured shall as soon as practicable after he ascertains the facts of such loss, give notice in writing thereof to the company, * * * and shall, within sixty days from date of loss, furnish this company with notice thereof in writing accompanied by affidavit stating the facts as to how the loss occurred and the extent thereof, so far as such facts are within his knowledge."

The record is barren of any evidence disclosing a compliance with the provision of the policy respecting sworn proof of loss to be filed with the defendant-company within the 60 days. There was, therefore, no issuable fact to be submitted to the jury in this particular, and in the absence of evidence to warrant a submission on the plea of waiver, the motion of the defendant for a directed verdict should have been sustained.

Plaintiff did offer, and was permitted to introduce in evidence, over objection, Exhibit K, which was an affidavit prepared and signed by plaintiff's attorney and served on the de-

2. INSURANCE: fire insurance: proof of loss: evidence: admissibility.

fendant company. Said affidavit bore date June 14, 1924, and appears to be an attempt to comply with the provision of the policy requiring proof of loss. It alleged, in substance, that the policy was issued for a certain period of time, recited the

number of the policy, described the property and use thereof, and stated that the cause of the fire was not known to him or his client, the plaintiff. Other matters are recited which are either pure hearsay or legal conclusion. The objections to this exhibit were sustainable; but, in the light of the entire record, although the admission of the exhibit was erroneous, it was error without prejudice.

We now turn to the question of waiver. It is pleaded by the plaintiff that:

"The defendant herein, by its own acts, has waived the requirements of the law which require that proof of loss be furnished, and are hereby estopped to set up such defense at this time."

We therefore inquire whether or not the facts, as established by the plaintiff, constitute a sufficient warrant for a submission of this plea to the jury. The defendant, upon the conclusion of plaintiff's evidence, filed a motion for a directed verdict, on the primary ground that the evidence was insufficient to sustain a verdict, by reason of failure to file sworn proof of loss within the prescribed time and in conformity to the provisions of the policy; that the evidence failed to show any acts, statements, or declarations made by the insurance company which could be interpreted by any reasonable person as a waiver of the requirement that written notice, accompanied by affidavit, should be given within 60 days after such loss; and that there is no evidence that the plaintiff relied upon or changed her position by virtue of any statements made, as claimed by the plaintiff. This motion was renewed at the close of all the evidence, and the grounds were again embodied in defendant's motion for new trial.

What is the evidence bearing on the plea of waiver? The facts may be summarized as follows: At the time of the fire, the insured, Mrs. Havirland, was in Hammond, Indiana, and shortly thereafter came to Fernald. She drove with her mother and husband to Cedar Rapids, and visited the home office of the defendant-company. She there met an office man, whom she did not know, and of whom she inquired for the president or the secretary of the company. At this time she handed to the unknown man the policy, which he took to someone in an inner room of the office. Upon his return, she was told that the ad-

juster of the company was not there, but was at the Allison Hotel. She then went to the hotel, and met a Mr. Kelly (deceased at the time of the trial). She testified that Mr. Kelly said "that the fire was in the state fire marshal's hands, and that he [Kelly] had nothing to do with it, and that there could be nothing done, and that there was nothing for us to do until he gave us a report; and we never heard from them. * * * Q. Did Mr. Kelly or the adjuster that you saw at the Allison Hotel give you any—state any reason why the matter was in the hands of the state fire marshal? A. No, sir. Q. In your conversation with Mr. Kelly or the adjuster at the Allison Hotel, did he state to you there had been any complaint filed that you or anyone else burned this property? A. Nothing, only that he said that it was in the hands of the fire marshal."

On January 16, 1924, about three months after Mrs. Havirland's visit to the home office of the company, she wrote a letter to the company, in which she said:

"It is my understanding that this property was totally destroyed by fire on or about October 6th, 1923. I called at your office in Cedar Rapids, Iowa about ten days afterwards and was unable to get any satisfactory information regarding same, and finally called on your Mr. Kelly at Hotel Allison regarding same and he did not seem to care to give any information regarding same, further than to state that same was in the hands of the state fire marshal and nothing further would be done until a report had been made by him."

It may not be said that the intent and content of Mrs. Havirland's conversation with Mr. Kelly were misunderstood by her. Mr. Kelly was the adjuster, and her claimed conversation is not in dispute. The material facts, briefly reviewed, disclose that she went directly to the home office of the company with her policy, and asked to see the president or the secretary, and was referred to the adjuster. She was told in plain English that there was nothing further for her to do until she heard from the company. It is undisputed that she never did hear further from the company or any of its agents or officers.

It is the general rule that mere silence cannot be construed as a waiver of the failure to furnish proof of loss; yet, if the insured is led to believe that proofs are not required of him until prepared by the insurer, there is a waiver. *Washburn-*

*Halligan Coffee Co. v. Merchants' Brick Mut. Fire Ins. Co.,*
110 Iowa 423 (80 Am. St. 311) ; 14 Ruling Case Law 1347, Section 519.

Again, where an adjuster assures the insured that no papers need to be presented, as he has all the information he desires, or that, while proofs should have been sworn to, he will adjust the loss without requiring it, the failure of the insured to comply with the policy is waived. However, a statement by the insurer, on receiving notice of loss, that the claim will receive prompt attention, or a statement, in response to an inquiry, that the policy will show what proofs are required, does not constitute a waiver of the policy requirements. *Kirkman v. Farmers' Ins. Co.,* 90 Iowa 457 (48 Am. St. 454).

Proofs of loss required by a policy of insurance may be waived by a shuffling or evasive course of conduct on the part of the company, amounting neither to an actual denial nor a distinct recognition of liability, but sufficient to lead a reasonably prudent person to believe that proofs of loss are not required. *Teasdale v. City of New York Ins. Co.,* 163 Iowa 596.

In the case at bar, the conduct of the insurance company must be viewed as more or less evasive. It had notice of the loss by letter, and also from the insured in person. It surely knew the purpose of her visit to the home office, and the statements made to her by the adjuster were sufficient to lull her to sleep and make her believe that there were no further steps for her to take in the collection of her insurance under her policy, until the company advised her in the premises.

The insurance company knew of its right to have proofs of loss, but it was also bound to know that it could waive this by such acts or conduct on its part as to justify the conclusion that it was not intending to insist upon full compliance with the terms of the policy or the statute. *Nicholas v. Iowa Merch. Mut. Ins. Co.,* 125 Iowa 262.

The case of *Ervay v. Fire Association of Philadelphia,* 119 Iowa 304, is distinguishable on the fact side. The insurance company in that case did nothing from which a waiver might be inferred, but it is held that, if the plaintiff has been misled into thinking that nothing further will be required of him, and has, on that account, failed to take further steps which he might have taken, then the company cannot take advantage of such

failure induced by it, or its authorized agent acting for it in the matter, for the purpose of defeating its liability under the policy.

It is argued by the instant appellant that what was said by Mr. Kelly, as claimed by plaintiff, should have put her on her guard, rather than to lull her into a feeling of security. We do not accept this viewpoint. True, the defendant-company had a right to wait for a sworn statement before attempting to settle for the amount of the loss, but it was not privileged to tell the insured, upon her explanation of her visit to the home office, that "there wasn't anything that could be done," or that "there was nothing for her to do" until the company made a report to her concerning the investigation then in progress.

We reach the conclusion that the trial court did not err in submitting the question of waiver to the jury for decision.

A further matter may receive brief mention. One of the defenses presented in the instant case was that the interest of the plaintiff in the property was other than unconditional and sole ownership, and as a part of its case the defendant offered in evidence the original petition, in which it is alleged that, at the time of the said loss, the plaintiffs W. M. Havirland and Roy S. Havirland were the owners of the said building, and that the property was jointly owned by the said parties. The plaintiff S. C. Sutherland was a mortgagee of the insured property.

3. INSURANCE: fire insurance: ownership of property: inadvertent plea: effect.

In plaintiff's amended and substituted petition it is alleged that she (Mrs. W. M. Havirland) "was the owner of said building." The record disclosed that the plaintiff's original petition, known as Exhibit 1, was admitted in evidence, but that the trial court, during the argument to the jury, made an order withholding and excluding the exhibit from the jury room. Of this action the appellant complains, and in support of the proposition cites *Arnd v. Aylesworth,* 145 Iowa 185.

It is conclusively shown that the insured, W. M. Havirland, was the sole owner of the property. She was the legal title holder, by an unrecorded but duly acknowledged warranty deed, executed by Roy S. Havirland, single, bearing date May 29, 1922, which was about a year before the policy in question was executed and delivered. The property was, at that time, subject to a first mortgage of $1,000 and a second mortgage of

$500. There could be no question as to the legal title in the insured at the time the policy issued, and at that time there was only a $500 mortgage against the property. The agent of the insurance company had knowledge of the title transactions involved herein.

Apparently the attorney who drew the original petition was under the impression that the plaintiff Roy S. Havirland, named therein, was a joint owner of the premises with Mrs. W. M. Havirland. This was the pleading of a fact which was not true, and which was corrected in the amended and substituted petition filed by the real party in interest.

We discover no reversible error in the record, and the judgment entered on the verdict is—*Affirmed*.

EVANS, JJ., and ALBERT, MORLING, and KINDIG, JJ., concur.